IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 05063 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Mark M.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 17, Pl.'s Mot.] is granted. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

## BACKGROUND

### I. Procedural History

On October 25, 2017, Plaintiff filed a claim for DIB and SSI, alleging disability since July 2, 2016 due to a deteriorating hip, lower back spasms, depression, anxiety, obesity, and sleep apnea. [Dkt. 16-1, R. at 103.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 113, 131.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 18, 2019. [R. 42.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 42.] Vocational expert ("VE") Julie L. Bose and medical expert Sai R. Nimmagadda, M.D., also testified. [R. 42, 75, 79.] On January 31, 2020, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. [R. 35.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner.

### II. The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 16-17.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 2, 2016 through his date last insured of December 31, 2019. [R. 17.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: C3-5 spondylosis and L5-S2 severe narrowing of the thecal sac (degenerative disc disease of the cervical and lumbar spine), obstructive sleep apnea, obesity, and osteoarthritis of the right hip. [R. 17-22.] The ALJ concluded at step three that his impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 22-23.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary

work except that he could push and pull occasionally, could not climb ladders, ropes, or scaffolds, and could not be exposed to environment conditions of vibration, wetness, unprotected heights, and dangerous moving machinery. [R. 23-34.] The ALJ further indicated that Plaintiff could climb ramps and stairs occasionally, as well as balance, stoop, crouch, kneel, and crawl occasionally. [R. 23-34.] At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a mail carrier and a purchasing manager/production manager. [R. 34.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act. [R. 34-35.]

## **DISCUSSION**

### I.     Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe*

*ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

**II. Analysis**

Plaintiff argues that the ALJ committed reversible error by: (1) failing to accommodate Plaintiff's non-exertional limitations; and (2) improperly evaluating Plaintiff's exertional limitations; and (3) improperly evaluating opinion evidence. After reviewing the record and the briefs submitted by the parties, this Court concludes that the ALJ erred in assessing Plaintiff's mental RFC. Because this failure alone warrants remand, the Court need not reach Plaintiff's additional arguments.

Plaintiff first argues that the ALJ erred by failing to account for Plaintiff's mental limitations in crafting the RFC. Plaintiff contends that the ALJ improperly discounted the opinion of Plaintiff's treating psychologist, Dr. Ailsa K. Nielsen and, as a result, concluded that Plaintiff had only mild limitations in two areas of mental functioning and no limitations in two other areas. Plaintiff also contends that the ALJ failed to incorporate the mild limitations he credited into the RFC. The Court agrees with Plaintiff that the ALJ erred by neither incorporating into the RFC Plaintiff's mild limitations in concentration, persistence and pace and adapting or managing himself, nor explaining why those mild limitations produced no functional restrictions that needed to be included in the RFC. This error requires remand.

The ALJ's sole discussion of Plaintiff's mental limitations came at step two, where the ALJ concluded that Plaintiff's depression and anxiety were non-severe impairments. In so doing, the ALJ evaluated the opinions of Dr. Nielsen and two agency consultants. [R. 20-21.] Dr. Nielsen opined in September 2018 that Plaintiff had many likely work-preclusive limitations, including, among others, limitations in the following areas that would preclude performance for 20% of an eight-hour workday: remembering locations and work-like procedures; understanding and remembering detailed instruction; maintaining attention and concentration to perform simple

5

tasks; performing activities within a schedule, maintaining attendance, and being punctual and within customary tolerances; and completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. [R. 1450-54.] Dr. Nielsen's narrative assessment noted that Plaintiff "endorsed" the foregoing "factors that preclude performance for 20% of a work day." [R. 1450.] The ALJ found Dr. Nielsen's opinion was "not persuasive" because it was based largely on Plaintiff's reporting of his own limitations; it was not supported by an explanation, as Dr. Neilsen's opinion mostly listed symptoms and subjective complaints and noted that Plaintiff is participating in therapy; and because it was inconsistent with examination findings and the claimant's own statements throughout the record, including his statement that he could follow instructions very well. [R. 21.]

Instead, the ALJ credited the opinions of the two agency consultants who found that Plaintiff had mild limitations in concentration, persistence, and pace and adapting or managing himself, but no limitations in understanding, remembering, or applying information and interacting with others. [R. 19-20.] The agency consultants explained that Plaintiff noted "pain-related concentration difficulties," but did not note "limitations resulting from other mental impairments," and the consultants concluded that assessment was "consistent with the medical evidence in the file." [R. 109, 125.] The ALJ adopted the consultants' findings of mild limitations in concentration, persistence, and pace and adapting and managing oneself, noting in his CPP discussion that Plaintiff's pain "may not be easily separable as there is some overlap between the mental symptoms with ongoing physical complaints." [R. 20.]

At the end of the ALJ's step two discussion of Plaintiff's mental impairments, the ALJ expressly noted:

6

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

[R. 21.] Notwithstanding the ALJ's statement that his step two discussion was "not a residual functional capacity assessment," the ALJ did not revisit Plaintiff's mental limitations throughout the rest of his opinion.

The Court need not determine whether the ALJ adequately evaluated the foregoing opinion evidence because even if the ALJ properly discounted Dr. Nielsen's opinions, the ALJ still failed to properly account for the mild CPP and adaptation limitations that he credited from the agency consultants. It is axiomatic that "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is true even if mental impairments "are non-severe and the limitations that they impose on the claimant's capabilities are minor." *Thomas G. v. Kijakazi*, No. 20-CV-5860, 2022 WL 4234967, at *4 (N.D. Ill. Sept. 14, 2022) (collecting cases). Time and time again, courts in this District have remanded ALJ opinions identifying non-severe mental impairments at step two that disappear without explanation when it comes time to craft the RFC before step four. *See e.g., Thomas G.*, 2022 WL 4234967, at 5 (Cummings, J.); *Kathy A. v. Kijakazi*, No. 20-CV-2387, 2022 WL 2758001, at *5 (N.D. Ill. July 14, 2022) (Cummings, J.); *Anthony W. v. Kijakazi*, No. 20 C 6209, 2022 WL 1062334, at *3 (N.D. Ill. Apr. 8, 2022) (Harjani, J.); *Judy D. v. Saul*, No. 17 C 8994, 2019 WL 3805592, at *4 (N.D. Ill. Aug. 13, 2019) (Schenkier, J.); *Iora P. v. Berryhill*, No. 18 C 3640, 2019 WL 1112272, at *4 (N.D. Ill.

Mar. 11, 2019) (Rowland, J.); *Hearan v. Berryhill*, No. 17 C 0542, 2018 WL 3352657, at *3 (N.D. Ill. July 9, 2018) (Gilbert, J.).

The ALJ here did exactly what this line of cases indicates is impermissible: the ALJ determined at step two that Plaintiff had non-severe mental impairments including mild CPP and adaptation limitations, but the ALJ failed to discuss or even mention Plaintiff's mild mental limitations in crafting the RFC. The arguments the Commissioner offers to stave off remand are unavailing. First, the Commissioner contends that the ALJ was entitled to rely on the opinions of the agency consultants, who did not identify any specific functional restrictions beyond noting that Plaintiff had mild CPP and adaptation limitations. But neither the ALJ nor the agency consultants ever noted or explained that Plaintiff had *no* concrete functional restrictions arising from his mild mental limitations; they simply noted that Plaintiff had mild CPP and adaptation limitations, and that the former involved pain-related concentration difficulties. [R. 20-21, 109, 125.] That the agency consultants did not translate mild limitations into concrete restrictions does not mean that the consultants opined that there were in fact no such restrictions, nor did the ALJ make any such express finding.[3]

More fundamentally, the Commissioner can't rely on the ALJ's step two discussion to justify the RFC because the ALJ expressly stated that his step two discussion was not an RFC assessment. The ALJ noted that his step two analysis was "not a residual functional capacity assessment" and indicated that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." [R. 21.] It is

---

[3] The Commissioner also suggests that the ALJ relied on Dr. Nimmagadda's discussion of Plaintiff's pain allegations in accounting for Plaintiff's mental limitations, but the ALJ never mentioned Plaintiff's mental impairments in discussing Dr. Nimmagadda's opinions (or in crafting the RFC more broadly), nor did Dr. Nimmagadda specifically address Plaintiff's mental limitations. [R. 23-31; 80-97.]

true, as the Commissioner points out, that ALJ opinions must be read holistically, and the failure to repeat an analysis from step two or three when crafting the RFC before step four is typically not a proper basis for remand. *See Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) ("[The sequential process is not so rigidly compartmentalized, and nothing in the *Chenery* doctrine prohibits a reviewing court from reading an ALJ's decision holistically."). But in this instance, where the ALJ expressly noted that his step two analysis did not constitute an RFC assessment, and that an RFC assessment required a more detailed analysis, "the Court will not overreach and ignore the ALJ's own words in an effort to read the opinion as a whole." *Anthony W.*, 2022 WL 1062334, at *3; *see also David K. v. Kijakazi*, No. 20-CV-1743, 2022 WL 2757695, at *5 (N.D. Ill. July 14, 2022) (same). "If the ALJ intended to incorporate restrictions caused by Claimant's mild mental limitations into the RFC, []he was obligated to explain how []he did so." *Viviana R. v. Kijakazi*, No. 19-CV-07419, 2022 WL 3354840, at *5 (N.D. Ill. Aug. 12, 2022). The ALJ's opinion contains no such explanation, notwithstanding the ALJ's promise of one.

The ALJ's step two analysis does include the conclusory, apparently boilerplate statement that "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." [R. 21.] Court after court has rejected this language as insufficient to properly account for mild mental limitations without a more thorough discussion when crafting the RFC, finding the language confusing or ambiguous:

> It is unclear what the ALJ meant by saying that the RFC "reflects" his Step 2 findings concerning [claimant]'s mental limitations. He could have intended this to mean that the RFC was designed to incorporate the mild impairments identified at Step 2, even though they were not specifically mentioned in the RFC. He could also have meant that he considered the Step 2 limitations as part of the RFC analysis but found them to be too mild to warrant additional non-exertional restrictions.

*David K.*, 2022 WL 2757695, at *5 (citing *Muzzarelli v. Astrue*, No. 10 C 7570, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011)). The ALJ was obligated to explain either how the RFC

9

"incorporate[d] restrictions caused by Claimant's mild mental limitations," or, alternatively, why "the ALJ believed that the mild mental limitations did not merit a non-exertional limitation in the RFC." *Viviana R.*, 2022 WL 3354840, at *5. The ALJ did neither.

The Commissioner suggests that it is incorrect to say that an ALJ must always include mental restrictions for non-severe impairments, but this response attacks a straw man. "Even if a mild limitation finding at step two does not necessarily equate to any RFC limitation, the ALJ must still affirmatively *evaluate* the effect such mild limitations have on the claimant's RFC." *Kathy A.*, 2022 WL 2758001, at *4 (cleaned up). It is the ALJ's failure to conduct such an evaluation—and not the ALJ's failure to find any limitations—that requires remand.

Finally, the Commissioner argues that because the jobs identified by the vocational expert in this case all involved unskilled work, it doesn't matter that the ALJ failed to evaluate Plaintiff's mild mental limitations in crafting the RFC. It is true that this type of error is particularly egregious when an ALJ finds that a Plaintiff can perform skilled work. *See, e.g., Anthony W.*, 2022 WL 1062334, at *4 ("The ALJ's error in the present case is particularly problematic because the VE found that Anthony could perform his previous work as an automobile salesperson and a household appliance salesperson; jobs that The Dictionary of Occupational Titles ("DOT") lists as skilled and semi-skilled employment."); *Iora P. v. Berryhill*, No. 18 C 3640, 2019 WL 1112272, at *4 (N.D. Ill. Mar. 11, 2019) ("This error is particularly problematic here, as the VE found that the ALJ's RFC would permit Plaintiff to perform her past skilled position as a senior financial advisor."). But courts have repeatedly remanded in indistinguishable circumstances, noting that "[e]ven a claimant's ability to perform unskilled work may be impacted or precluded by difficulties with memory and concentration." *Kathy A.*, 2022 WL 2758001, at *4; *see also Thomas G.*, 2022 WL

10

4234967, at *4; *Viviana R. v. Kijakazi*, 2022 WL 3354840, at *4. The Court cannot say that the ALJ's error was harmless.[4]

"On remand, the ALJ must either incorporate into the RFC non-exertional limitations that account for Claimant's mild limitations in [adapting or managing himself] and his mild limitations in concentration, persistence, and pace, *or* explain why such limitations are unnecessary." *Kathy A.*, 2022 WL 2758001, at *5. Because the ALJ's failure to adequately account for Plaintiff's mental limitations in the RFC requires remand, the Court need not address Plaintiff's remaining arguments. The Administration should not, however, construe the Court's silence on the remaining issues as an indication that the ALJ's initial adjudication was appropriate or not with respect to those issues.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [17] is granted. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 12/27/2022

BETH W. JANTZ
United States Magistrate Judge

---

[4] The Commissioner's suggestion that any error is irrelevant because the VE identified unskilled jobs that Plaintiff could perform is also at odds with the Seventh Circuit's repeated rejection of "the notion that a hypothetical confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019). The Commissioner cites *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) in support of her argument, but *Pavlicek* held only that the ability to perform simple, repetitive work is not inherently inconsistent with moderate CPP limitations; the Court did not hold that limitations to unskilled or simple and repetitive work *always* account for moderate (or mild) CPP limitations.

11